UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W. BARTON, | CASE NO. 3:25-cv-05310-DGE |
| Plaintiff, | ORDER ON MOTION TO DISMISS (DKT. NO. 22) |
| v. | |
| BRIGHT SOLAR MARKETING LLC, | |
| Defendant. | |

This matter comes before the Court on Defendant Bright Solar Marketing LLC's motion to dismiss.[1] (Dkt. No. 22.) The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the record. For the reasons set forth below, Defendant's motion is GRANTED.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] The motion to dismiss identifies it is filed on behalf of three named Defendants. (Dkt. No. 22 at 7.) However, a review of the docket indicates no attorney has appeared on behalf of Freedom Solar Services or High Roller Marketing LLC. The motion therefore is filed only on behalf of Bright Star Marketing LLC.

1       On April 11, 2025, Bright Solar Marketing LLC ("BSM") filed a notice of removal, removing Plaintiff's complaint, originally filed in the Clark County Superior Court, to federal court. (Dkt. No. 1.) On July 1, 2025, Plaintiff filed an amended complaint. (Dkt. No. 10.)

Plaintiff's amended complaint asserts 15 causes of action against Defendants BSM, Freedom Solar Services ("FSS"), High Roller Marketing LLC ("HRM"), Sunrun Inc. ("Sunrun"), and Clean Energy Experts LLC ("CEE").[2] (Dkt. No. 10.) Plaintiff's first 7 causes of action assert violations of the Telephone Consumer Protection Act ("TCPA") and its implementing regulations. (*Id.* at 31–34.) Plaintiff's remaining claims assert causes of action under the Washington Do Not Call statute ("WDNC"), Washington Revised Code § 80.36.390, and the Washington Automatic Dialing and Announcing Device Act ("WADADA"), Washington Revised Code § 80.36.400. (*Id.* at 34–38.) Plaintiff's complaint seeks an injunction preventing Defendants from "calling phone numbers using pre-recorded or artificial voices without consent" and "calling numbers on the FTC *do-not-call* registry without consent." (*Id.* at 39.)

On July 28, 2025, BSM filed a motion to dismiss Plaintiff's amended complaint. (Dkt. No. 22.) On August 6, 2025, Plaintiff responded to BSM's motion. (Dkt. No. 23.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston*

---

[2] On August 25, 2025, Plaintiff filed a notice that he was voluntarily dismissing his claims against defendants Sunrun and CEE. (Dkt. No. 24.)

*v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555.  The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.  Additionally, complaints filed pro se are "to be liberally construed"; "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under *Iqbal*.").  "Unless it is absolutely clear that no amendment can cure the defect, [] a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr*., 66 F.3d 245, 248 (9th Cir. 1995).  However, leave to amend is properly denied if amendment would be futile. *See Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010); *Lipton v. Pathogenesis Corp*., 284 F.3d 1027, 1039 (9th Cir. 2002).

ORDER ON MOTION TO DISMISS (DKT. NO. 22) - 3

### III. DISCUSSION

#### A. Rule 8(a)(2)

BSM argues Plaintiff's complaint runs afoul of Federal Rule of Civil Procedure 8(a)(2) by engaging in impermissible "shotgun pleading." (Dkt. No. 22 at 14–18.) Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

Plaintiff's amended complaint alleges "The Telemarketer" obtained his phone number from a subcontractor "who pretended [Plaintiff] gave his consent to be called." (Dkt. No. 10 at 3.) Plaintiff alleges "[D]efendants" knew or should have known their lead generation services fraudulently obtained his consent. (*Id.*) Plaintiff alleges that, relying upon this fraudulent consent, "The Telemarketer" placed a "long series of voice and robocalls to Plaintiff[.]" (*Id.*) Plaintiff alleges "[t]hey" did this to him, violating the TCPA and Washington State law in the process. (*Id.* at 5.)

Plaintiff alleges "The Telemarketer" has called him "many times" using fake business names and two calling scripts, which Plaintiff identifies as Calling Script A ("Script A") and Calling Script B ("Script B"). (*Id.* at 9–10.) Plaintiff alleges that between March and July of 2023, he received 14 calls utilizing Script A. (*Id.* at 11–12.) Plaintiff contends the calls he received utilizing Script A all began with a recorded message asking a series of questions. (*Id.* at 10.) When Plaintiff answered these questions, he was transferred to a live operator who

identified him or herself as calling from "American Solar" or "Solar America,"[3] which Plaintiff alleges is another name for CEE, which is itself a subsidiary of Sunrun. (*Id.*) Plaintiff alleges Sunrun has a business partnership with Freedom Forever, LLC[4] and that "FSS, BSM LLC, and HRM work exclusively for Freedom Forever and Freedom Forever's dealers." (*Id.*) Plaintiff contends the live operator asked him a series of additional questions and arranged a time for "an expert" to call him back within two days. (*Id.* at 11.) Plaintiff alleges "The Telemarketer" then "electronically transfer[ed] the information they collected from the call to BSM and BSM accept[ed] the information knowing it was collected from outbound solicitation telephone calls." (*Id.*)

Plaintiff further alleges that between March and July of 2023, he received three calls utilizing Script B, which follows a similar pattern to Script A, with a recorded message identifying the caller as "Solar Solutions" and a live operator identifying the caller as "American Solar." (*Id.* at 13–14.)

BSM asserts that Plaintiff's complaint avoids directing allegations to any single Defendant and instead engages in improper "group pleading" by using the terms "The Telemarketer" or "Defendants" to lump together four separate companies that do not have a common owner or parent. (Dkt. No. 22 at 15.) BSM further asserts Plaintiff's complaint contains "myriad pointless allegations" concerning "hearsay blog posts," calls to Texas area code numbers, and irrelevant deposition testimony from other lawsuits. (*Id.* at 14.)

---

[3] Plaintiff called back several of the numbers from which he received calls utilizing Script A; these calls were answered by an automated male voice identifying itself as "Solar USA" and a live agent identifying the company as "State Solar." (*Id.* at 12.)

[4] Freedom Forever LLC is the parent company of BSM. (Dkt. No. 2.) The complaint appears to allege that Freedom Forever LLC and Freedom Solar Services are distinct entities.

Plaintiff argues the blog posts referenced in his complaint are posts from other individuals about unwanted telemarketing phone calls from BSM and employees of the company describing their work experiences. (Dkt. No. 23 at 1–2.) Plaintiff further argues Defendants called two of his phone numbers with Texas area codes. (*Id.* at 1.) Plaintiff contends BSM and FSS are "alter-egos" that run the same call centers in California and Nevada. (*Id.* at 3.) Plaintiff contends HRM "manag[es] the dialer of the telemarketing operation and was responsible for not dialing [Plaintiff] as his numbers were registered on the national do-not-call list." (*Id.*) Plaintiff contends the three companies initiate phone calls from the two call centers using the name "Solar America," which they obtained from CEE. (*Id.*) Plaintiff alleges these four companies became "The Telemarketer" as that term is defined in 47 C.F.R. § 64.1200(12)(c).[5] (*Id.*)

Plaintiff's complaint suffers from several deficiencies. First, Plaintiff's complaint contains numerous allegations of uncertain relevance to Plaintiff's claims. (*See e.g.* Dkt. No. 10 at 25–31.) "Pleadings that seek to overwhelm defendants with an unclear mass of allegations and make it difficult to impossible for the defendants to make informed responses to the plaintiff's allegations are considered 'shotgun' pleadings." *Watt v. HAL Antillen N.V.*, Case No. 2:24-cv-00155-RSL, 2024 WL 4436966, at *2 (W.D. Wash. Oct. 7, 2024) (quoting *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020)).

Second, Plaintiff alleges the named Defendants have merged into a single entity which Plaintiff calls "The Telemarketer" and to which Plaintiff collectively attributes all the conduct alleged in the complaint. Plaintiff's complaint refers to "The Telemarketer" approximately 30 times and attributes a wide range of conduct by different individuals and companies to this

---

[5] Under 47 C.F.R. § 64.1200(f)(12), the term "telemarketer" means "the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

ORDER ON MOTION TO DISMISS (DKT. NO. 22) - 6

entity. Elsewhere in the complaint, Plaintiff generically references conduct by "Defendants" without specifying which Defendant committed which alleged act. (Dkt. No. 10 at 32–35, 37–38.)

Courts have routinely found that such "group pleading" is impermissible under Rule 8. "A complaint that alleges 'everyone did everything' and prevents defendants from understanding the nature of the claims asserted against each of them cannot survive a motion to dismiss." *Watt*, 2024 WL 4436966, at *2; *MFG Universe Corp. v. Next Gen LED, Inc.*, Case No. C21-0742-JCC, 2022 WL 3028081, at *2 (W.D. Wash. Aug. 1, 2022) ("Except in a few instances, the [complaint] treats the Individual Defendants as an undifferentiated mass. It does not make sufficient particularized allegations for each to satisfy pleading standards for the remaining causes of action. This alone is a basis for dismissal."); *Davis v. General Atomics*, Case No. 8:23-cv-00132-WLH-ADS, 2025 WL 1127872, at *8 (C.D. Cal. Jan. 23, 2025) ("Plaintiff makes no differentiation about what claims apply to which Defendants . . . [t]his fails to satisfy the notice requirement of Rule 8(a)(2), as it is unclear what each Defendant is alleged to have done.").

Third, Plaintiff's complaint alleges the existence of a complex and confusing relationship between Defendants that justifies grouping them together as "The Telemarketer" and attributing conduct to this entity rather than to Defendants individually. This alleged relationship is further complicated by Plaintiff's voluntary dismissal of Defendants CEE and Sunrun, both of whom appear to play important roles in the course of conduct alleged by Plaintiff.

For example, Plaintiff appears to allege that "Solar America" and "American Solar," the companies that called him using Scripts A and B, were fictitious business names utilized by CEE, whose parent company is allegedly Sunrun, and that BSM would not be answering phone calls connected to Solar America "without CEE's and Sunrun's knowledge and approval." (Dkt.

No. 10 at 10.) Plaintiff further alleges Sunrun "ratified" the calls made by CEE. (*Id.* at 23.) Plaintiff makes numerous allegations against both companies (*see id.* at 19–23), and it is unclear what impact the extraction of these Defendants from the collective entity known as "The Telemarketer" would have on Plaintiff's claims.

Plaintiff's complaint fails to give BSM adequate notice of the allegations against it as compared to the other Defendants and constitutes improper shotgun pleading. As such, Plaintiff's complaint is DISMISSED without prejudice. Plaintiff is granted leave to file a second amended complaint that remedies the deficiencies identified herein.

Notwithstanding dismissal of the entire operative complaint with leave to amend, the Court will address BSM's additional arguments regarding the type of relief and claims Plaintiff may assert in this action.

### B. Injunctive Relief

BSM contends Plaintiff lacks the Article III standing necessary to seek injunctive relief. (Dkt. No. 22 at 11–13.) BSM argues Plaintiff's complaint makes no plausible allegations of "a real and immediate threat of repeated injury" because he asserts he last received a phone call in July 2023. (*Id.* at 12.) BSM contends Plaintiff does not plausibly allege he will receive calls in the future and argues the length of time since the last alleged call demonstrates the lack of an immediate threat of another call. (*Id.*) Plaintiff contends his complaint does not contain an "exhaustive" list of the calls he received from Defendants. (Dkt. No. 23 at 2.)

Federal courts are "courts of limited jurisdiction." 5B ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 1350 (3d ed. 2022). "Article III [of the Constitution] confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "One element of the case-or-

controversy requirement is that . . . [plaintiffs] based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

In order to establish standing for seeking an injunction, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Brown v. Sager*, Case No. 2:23-cv-00157-LK-MLP2024 WL 168609, at *5 (W.D. Wash. Jan. 16, 2024) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). "Nor does speculation or 'subjective apprehension' about future harm support standing." *Id.* "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a "real or immediate threat . . . that he will again be wronged in a similar way." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Here, Plaintiff's complaint alleges he last received a phone call from Defendants more than two years ago, and makes no plausible allegation that he will receive phone calls in the future. *Blair v. Assurance IQ LLC*, Case No. C23-0016-KKE, 2023 WL 6622415, at *5 (W.D. Wash. Oct. 11, 2023) (dismissing plaintiff's claim for injunctive relief when, at the time the amended complaint was filed, "it had been three months since the last alleged call" and plaintiff "d[id] not allege continuing, present adverse effects due to his exposure to [the] calls."); *Brown*

*v. Nano Hearing Tech Opco, LLC*, Case No. 3:24-cv-00221-BTM-JLB, 2024 WL 3367536, at *8 (S.D. Cal. July 9, 2024) ("[Plaintiff] alleges she received three calls within one month in 2023 and does not allege she has received any additional calls since then. . . . [t]he timing and number of calls do not show 'a sufficient likelihood that [s]he will again be wronged in a similar way.'") (quoting *Lyons*, 461 U.S. at 111); *Miller v. Time Warner Cable Inc.*, Case No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) ("At the time plaintiff initiated this action, plaintiff had not received an unsolicited call from [defendant] in approximately eight months. . . . [i]n light of that fact, nothing indicates that plaintiff has more than a hypothetical stake in equitable relief.").

      Given the time that has elapsed since the last call, the possibility that Plaintiff may receive additional phone calls in the future is too speculative to establish a real or immediate threat of injury. Plaintiff's only response to BSM's argument is that the list of calls in his complaint is not exhaustive, implying he may have received additional, more recent phone calls from Defendants that he did not include in his complaint. "When evaluating whether the standing elements are present, [the district court] must look at the facts as they exist at the time the complaint was filed." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014) (cleaned up). Plaintiff's complaint contains no facts about any additional calls, and his implication that there may have been such calls is speculative. Accordingly, Plaintiff has not established a likelihood of future harm sufficient to confer Article III standing for an injunction, and his claim for injunctive relief is DISMISSED. Absent the assertion of new facts supporting Article III standing, Plaintiff's new amended complaint should not include a claim for injunctive relief.

### C. TCPA Claims

#### 1. Count 4

BSM argues Plaintiff's claim under 47 C.F.R. § 64.1200(b) should be dismissed because the regulation does not confer a private right of action. (Dkt. No. 22 at 18–21.) Plaintiff maintains there is a private right of action, but "will save that argument for another day" and agrees to dismiss Count 4. (Dkt. No. 23 at 5.) Accordingly, Count 4 of Plaintiff's complaint is DISMISSED with prejudice and should not be included in Plaintiff's new amended complaint.

#### 2. Count 7

BSM next argues Plaintiff's claim that Defendants violated 47 C.F.R. § 64.1601(e) should also be dismissed because the regulation does not confer a private right of action. (Dkt. No. 22 at 21–22.) The regulation provides that "[a]ny person or entity that engages in telemarketing . . . must transmit caller identification information." 47 C.F.R. § 64.1601(e). Plaintiff alleges that "[i]n almost all calls the callers transmitted fake numbers" and "the callers had the ability to transmit the name of the telemarketer and intentionally chose not to." (Dkt. No. 10 at 34.)

District courts have typically found that 47 C.F.R. § 64.1601(e) does not create a private right of action. *Meyer v. Capital Alliance Group*, Case No. 15-CV-2405-WVG, 2017 WL 5138316 at *17 (S.D. Cal. Nov. 6, 2017) (analyzing the TCPA's scheme and finding §64.1601(e) "does not expressly convey a private right of action" because it "appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim.") (internal citation omitted); *Griffin v. American-Amicable Life Ins. Co.*, Case No. 6:24-cv-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024) (citing with approval "the thoughtful analysis of" *Meyer* and other courts

and holding that "Plaintiffs may not pursue a private right of action . . . for alleged violations of 47 C.F.R. § [64].1601(e)."); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020) (citing *Meyer* with approval and finding that "[a]bsent any authoritative basis for a private cause of action for 'spoofing' under this federal communications regulation [§ 64.1601(e)(1)], the Court is disinclined to create one here.").

Plaintiff argues § 64.1601(e) does create a private right of action, relying on two recent district court decisions. In a separate *Dobronski v. SelectQuote Ins. Servs.* ("*Dobronski* 2'), the court found that the relevant question with respect to § 64.1601(e) was not whether courts should imply or create a right of action, but whether "as a matter of textual interpretation, § 64.1601(e) falls within the scope of an express cause of action that Congress has already created." 773 F.Supp.3d 373, 380 (E.D. Mich. 2025). The court first identified the potential subsections of 47 U.S.C.§ 227 under which § 64.1601(e) was promulgated and then eliminated each subsection that could not have been used as authority to promulgate § 64.1601(e). *Id*. at 376. By process of elimination, the court concluded only 47 U.S.C. § 227(c) could have been used to promulgate § 64.1601(e) because it was "unclear from where in [47 U.S.C. § 227's other] subsections the FCC gained authority to create a blanket requirement applying to all calls including those that do not relate to automatic dialing, fax machines, or artificial or prerecorded messages." *Id*. Accordingly, it found the private right of action in 47 U.S.C. § 227(c)(5) was available for violations of § 64.1601(e). *Id*. at 380.

Similarly, the court in *Newell v. JR Capital, LLC* found § 64.1601(e) was "promulgated under § 227(c), and that a private right of action exists." Case No. 25-1419, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025). The court in *Newell* found that Congress "believed that it was important to allow private citizens to enforce certain provisions of the TCPA, and expressly

created a cause of action under § 227(c) of the Act." *Id.* at *3. The court cited language in § 227(c)(5) which provides that any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring "an action based on the violation of the regulations prescribed under this subsection" for damages and injunctive relief. *Id.* The court concluded that "because Congress expressly and unequivocally created a private cause of action based on a violation of the regulations prescribed under [§ 227(c)], there is a private cause of action to enforce violations of § 64.1601(e)." *Id.* at *8.

There is no controlling authority concerning whether § 64.1601(e) confers a private right of action and the Court acknowledges there is a difference of opinion among district courts on this question. Nevertheless, the Court finds more persuasive *Dobronski* 2 and *Newell*.

Accordingly, Plaintiff may include in the new amended complaint a claim based on an alleged violation of 47 C.F.R. § 64.1601(e).

### D. Washington State Law Claims

1. Counts 8 and 9

BSM argues Counts 8 and 9, which allege violations of the WDNC prior to July 23, 2023, are precluded by the language of the statute during that timeframe. (Dkt. No. 22 at 22–23.) Defendants assert that prior to July 23, 2023, the statute defined "telephone solicitation" as "the unsolicited initiation of a telephone call by a commercial or nonprofit company or organization to a residential telephone customer ***and conversation*** for the purpose of encouraging a person to purchase property, goods, or services or soliciting donations of money, property, goods, or services." Wash. Rev. Code § 80.36.390(1) (emphasis added); *see Hartman v. United Bank Card, Inc.*, Case No. C11-1753JLR, 2012 WL 12882864, at *4 (W.D. Wash. Mar. 23, 2012).

BSM argues a "conversation" is required to maintain a cause of action under § 80.36.390 for claims filed before July 23, 2023. (Dkt. No. 22 at 23.) BSM notes the word "conversation" was not defined in that iteration of the statute, and suggests the Court adopt the word's dictionary definition: "the act or an instance of talking together; specif., a) familiar talk; verbal exchange of ideas, opinions, etc." *See Hartman*, 2012 WL 12882864 at *4 (quoting Webster's New World Dictionary (3d ed. 1998)). BSM therefore argues Plaintiff's complaint fails to state a claim under § 80.36.390 with respect to any calls that do not involve a "conversation." (Dkt. No. 22 at 23.)

Plaintiff argues his complaint alleges the initiation of telephone calls and conversations by Defendants. (Dkt. No. 23 at 5.) Plaintiff contends the calls cited in his complaint began with a recorded message and transitioned to a live operator who asked a series of screening questions to which Plaintiff responded. (*Id.*) Plaintiff further asserts, with respect to several calls in the complaint, that he spoke to a live operator concerning his residence and his desire to be removed from the company's calling list. (*Id.*)

To the extent Plaintiff alleges he spoke to a live operator, he has sufficiently alleged that a "conversation" took place for purposes of the statute. Courts have found a conversation did not take place for purposes of § 80.36.390 only in circumstances when a plaintiff received pre-recorded messages and was unable to speak to a live operator. *See Kalmbach v. Nat'l Rifle Ass'n of Am.*, Case No. C17-399-RSM, 2017 WL 3172836, at *1, *4–*5 (W.D. Wash. July 26, 2017). BSM appears to acknowledge that Plaintiff's interactions with a live operator can constitute a "conversation" for purposes of the statute, but argues Plaintiff fails to state a claim because he did not use the word "conversation" in his complaint. (Dkt. No. 25 at 9.)

Here, Plaintiff has sufficiently alleged interactions that appear to meet the definition of "conversation" cited by BSM, even if he has not used that word in his complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 447–448 (4th Cir. 2011) (rejecting the argument that a claim for price discrimination had not been sufficiently pleaded "because [the counterclaimant] did not use the phrase 'price discrimination' in its Counterclaim"); *Okoli v. City of Baltimore*, 648 F.3d 216, 224 n. 8 (4th Cir. 2011) ( "[S]exual harassment complaints need not include 'magic words' such as 'sex' or 'sexual' to be effective."); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) ( "Courts may look to—they must look to—the substance of a complaint's allegations . . . [o]therwise, [statutory] enforcement would [be] reduce[d] to a formalistic search through the pages of the complaint for magic words[.]").

Accordingly, BSM may continue to assert these claims in the new amended complaint.

2. Count 10–14

BSM argues Counts 10 through 14 of Plaintiff's complaint should be dismissed because they relate to calls that occurred "[o]n or after July 23, 2023." (Dkt. Nos. 10 at 35–37; 22 at 23–24.) BSM contends Plaintiff has not alleged the receipt of any calls on or after this date. (Dkt. No. 22 at 23–24.) Plaintiff concedes he has not alleged receipt of any calls on or after July 23, 2023, but repeats his assertion that the list of calls in his complaint is not exhaustive. (Dkt. No. 23 at 5.) As discussed above, Plaintiff's suggestion that he may have received additional calls from Defendants is insufficient to state a claim.

Accordingly, the new amended complaint should not include claims related to phone calls made on or after July 23, 2023 unless Plaintiff is able to identify specific phone calls made on or after this date.

3. Count 15

BSM argues Plaintiff cannot maintain a cause of action under WADADA because he has not plausibly pleaded the alleged calls originated from "an automatic dialing and announcing device." (Dkt. No. 22 at 24–26.)

Under WADADA, "[n]o person may use an automatic dialing and announcing device for purposes of commercial solicitation." Wash. Rev. Code. § 80.36.400(2). Under the version of WADADA in effect prior to July 2023, an "an automatic dialing and announcing device" was defined as a device which "automatically dials telephone numbers and plays a recorded message once a connection is made." Wash. Rev. Code § 80.36.400(1)(a); *Rinky Dink, Inc. v. Electronic Merchant Sys.*, Case No. C13–1347–JCC, 2015 WL 778065, at *8 (W.D. Wash. Feb. 24, 2015).

The Ninth Circuit has noted that federal courts "have no guidance from the Washington courts on how Washington interprets" the provisions of WADADA. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 919 (9th Cir. 2012). However, the Ninth Circuit found the text of WADADA is "substantially similar to its federal counterpart, as is its purpose." *Id.* In interpreting the TCPA, the Ninth Circuit has held that an "automatic telephone dialing system" must "generate and dial random or sequential telephone numbers under the TCPA's plain text." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022); *see Brickman v. United States*, 56 F.4th 688, 690 (9th Cir. 2022) (applying *Borden* and finding defendant "did not violate the TCPA because it did not use a TCPA-defined autodialer that randomly or sequentially generated the telephone numbers in question.").

BSM argues Plaintiff has not alleged the calls he received in 2023 were made using "equipment to randomly or sequentially generate [his] phone numbers." (Dkt. No. 22 at 25.) BSM contends Plaintiff has only made a conclusory allegation that Defendants "used

an automatic dialing and announcing device to initiate all the robocalls . . . to [his] phone numbers." (Dkt. Nos. 10 at 38; 22 at 25–26.)

Plaintiff concedes there are similarities between WADADA and the TCPA, but argues there are differences between WADADA's definitions of "automatic dialing and announcing device" and the TCPA's definition of "automatic telephone dialing system." (Dkt. No. 23 at 6.) Plaintiff is correct that there are differences between the two definitions: notably, WADADA's definition omits any reference to a "random or sequential number generator." *Compare* Wash. Rev. Code § 80.36.400(1)(b) *with* 47 U.S.C. § 227(a)(1).

BSM cites a recent case from this district which found Plaintiffs had not alleged facts "that give rise to a plausible inference that defendants used equipment to randomly or sequentially generate their phone numbers" as required by Ninth Circuit case law. *Dawson v. Porch.com*, Case No. 2:20-cv-00604-RSL, 2024 WL 4765159, at *9 (W.D. Wash. Nov. 13, 2024).

This case is distinguishable from *Dawson* because Plaintiff's claim under WADADA does not require him to plead facts concerning Defendants use of a random or sequential number generator. Rather, WADADA's definition of an "an automatic dialing and announcing device" effective during the relevant period requires Plaintiff to plead facts giving rise to a plausible inference that Defendants utilized a device "which automatically dials telephone numbers and plays a recorded message once a connection is made." Based on the facts in the complaint, the Court finds Plaintiff has sufficiently pleaded that Defendants used such a device and played a recorded message once Plaintiff answered the phone. (See Dkt. No. 10 at 20–31.)

According, Plaintiff's new amended complaint may continue asserting a cause of action under the WADADA.

ORDER ON MOTION TO DISMISS (DKT. NO. 22) - 17

## IV.   ORDER

For the reasons discussed above, BSM's motion to dismiss (Dkt. No. 22) is GRANTED. Plaintiff is directed to file a new amended complaint that addresses the deficiencies identified in this order. Plaintiff's new amended complaint should identify each defendant's individual alleged conduct, should be succinct, and should not include extraneous alleged facts or exhibits. Also, the new amended complaint should not include claims the Court has ruled are not actionable, *see supra* Sections III.B. through III.D. The new amended complaint SHALL be filed **no later than October 30, 2025**.

Dated this 9th day of October, 2025.

David G. Estudillo
United States District Judge